George Hofmann, Esq. (10005)
Matthew M. Boley, Esq. (8536)
**PARSONS KINGHORN HARRIS, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone:  (801) 363-4300
Facsimile:   (801) 363-4378
E-mail:  mmb@pkhlawyers.com

*Attorneys for* debtor-in-possession
NUMIRA BIOSCIENCES INC.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| In re:<br>**NUMIRA BIOSCIENCES INC.**,<br>Debtor. | Bankruptcy No. 13-27663 JTM<br>Chapter 11<br>Honorable Joel T. Marker |
|---|---|

**DEBTOR'S MOTION TO AUTHORIZE THE USE OF CASH COLLATERAL**

NUMIRA BIOSCIENCES INC., debtor and debtor-in-possession (the "**Debtor**") in the above-captioned bankruptcy case (the "**Case**"), through counsel, hereby moves this Court to enter an Order authorizing the Debtor to use cash collateral on a final basis.

As permitted by Local Rule 9013-1(d), this motion may be supported by a separately filed memorandum of points and authorities to be filed at a later date.

**I.    COMPLIANCE WITH BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2**

1.    The following entities claim, or may claim, an interest in the Debtor's cash collateral (collectively, the "**Cash Collateral Lienors**"): (a) UTFC Fund II, LLC ("**UTFC**"); (b) Porter Capital Corporation ("**Porter**"); and (c) a group of co-lenders represented by vSpring III, L.P. ("**vSpring**") as collateral agent.[1]

2.    The Debtor proposes to use its cash, including to the extent it constitutes cash collateral, to pay the Debtor's ordinary post-petition operating expenses and certain

---

[1]    The co-lender's represented by vSpring as collateral agent include:  vSpring; various affiliates of vSpring (including vSpring III D, LP, vSpring III, (SP) LP and/or vSpring Partners III LP); Crocker Ventures, LLC ; Dave Weinstein LLC; Dinesh Patel; JLS Holdings, LLC; Kickstart Capital, LLC; and other persons.

{00172791.DOC /}

administrative expenses (the "**Approved Expenses**"), as more particularly described on the budget attached as **Exhibit "A"** (the "**Budget**").

3. The Debtor seeks entry of a final order authorizing use of cash collateral through the period ending November 30, 2013.

4. The Motion anticipates, and the Debtor requests, that the Court schedule further hearings to consider and approve use of cash collateral for future periods, based upon budgets to be submitted in advance of such further hearings.

5. The Debtor proposes that the Order(s) approving this Motion on a final basis provide the following "adequate protection" to affected creditors (collectively, the "**Adequate Protection Rights**"):

    a. the Cash Collateral Lienors and any other affected creditors will receive a replacement lien upon all pre-petition and post-petition assets of the Debtor (excepting chapter 5 claims) to the extent the Debtor's use of cash collateral results in a diminution in the amount or value of the secured claim of such creditor;

    b. the Debtor will pay adequate protection payments to UTFC in the amount of $3,565.17 per month; and

    c. the automatic stay arising under 11 U.S.C. § 362(a) shall be modified to authorize Porter (i) to collect the specific accounts that the Debtor factored with Porter prepetition, (ii) to recover and apply the amounts collected according to the terms and conditions of that certain *Recourse Receivable Purchase & Security Agreement*, between Porter and the Debtor, and (iii) to return and forward any excess amounts and all other amounts to the Debtor.

6. The Debtor does not request any "extraordinary relief" within the meaning of Local Rule 4001-2(a)(1).

7. A summary of the proposed use of cash collateral is as follows: (a) the Debtor proposes to use approximately $145,268.64 in cash that it presently holds to pay the Approved

Expenses, as more particularly detailed on the Budget; (b) the Debtor proposes to use cash collateral to pay expenses in the amounts specified in the Budget; and (c) the Debtor proposes to grant any Affected Creditors the Adequate Protection Rights described above, including a replacement lien upon the post-petition assets of the Debtor.

8. As can be seen from the Budget, the Debtor projects it will require additional capital to support its business beginning in late September 2013. The Debtor anticipates filing a separate motion to approve post-petition financing to be heard before late September 2013 to cover this cash shortfall. It is not anticipated that the lender will receive a "priming" lien superior to the Cash Collateral Lienors. The Debtor will ask the Court to approve the Budget and the Debtor's use of Cash Collateral pursuant to the Budget, but will request the Court to approve the Debtor's use of cash collateral after September 30, 2013, contingent upon the Debtor's obtaining Court approved post-petition financing in an amount sufficient to cover the projected cash shortfall.

## II. JURISDICTION AND VENUE

9. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

10. This is a core proceeding under 28 U.S.C. § 157(b).

11. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. PROCEDURAL BACKGROUND

12. The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on July 5, 2013 (the "**Petition Date**") at approximately 10:20 a.m. (Mountain Time).

13. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

14. No examiner or trustee has been appointed in this Case.

## IV. RELEVANT FACTS

15. The Debtor is a specialty contract research organization (CRO) that combines innovative tools and technologies to provide unique solutions to preclinical drug discovery efforts, medical and/or pharmaceutical research and treatment, and other bioscience challenges. The Debtor offers a variety of *ex vivo* services to its clients, including: atherosclerosis services; bioassay services; bone services (e.g., bone morphometry, bone imaging and biomechanical bone testing); central nervous system (CNS) imaging; histology services; oncology services; osteoarthritis services; pulmonary services; rheumatoid arthritis services; and imaging of vasculature.  The Debtor also provides image processing and visual analytics to assist with scientific analysis, journal publication, meeting presentations and other client needs.

16. While the Debtor owns patents, patents pending and significant proprietary information and techniques, its true value lies in (a) the unique and highly talented team of scientists, researchers and technicians that provide services, (b) its hard-earned reputation; and (c) its small but growing customer base.

17. The Debtor currently operates out of two separate facilities – one in Salt Lake City, Utah and the other in Bellevue, Washington.  The Debtor employs thirty-one individuals on a full-time basis, and five individuals on a part-time basis.  In addition to rent and employee wages, the Debtor also incurs regular expenses in the operation of its business to purchase materials and/or services that are necessary to permit the Debtor to permit its team to run at full efficiency and a critical component of fulfilling its obligations to customers.

18. At the time of the bankruptcy filing, the Debtor had $81,605.78 in cash in its operating account.[2]  At present, the Debtor has approximately $146,268.64 in cash in its operating account.  The Debtor needs to use this cash to pay operating expenses and to maintain active business operations.

---

[2] The Debtor held additional amounts in trust (a) on account of employee contributions to the Debtor's employee flex spend program, and (b) employee contributions to the Debtor's 401k plan.

{00172791.DOC /}    4

19. More specifically, in order to maintain active business operations, the Debtor must pay the operating expenses listed on the Budget. Failure to pay such expenses likely would lead to a shut down of the Debtor's business operation. The Debtor would not be able to fulfill its commitments to clients, resulting not only in a loss of potential revenue but potential damages claims. Further, cessation of business operations likely would result in a substantial, if not complete, erosion of the Debtor's enterprise or going concern value.

V. **RELIEF REQUESTED**

20. The Debtor asks the Court to authorize the Debtor's use of cash collateral in accordance with the budget attached hereto as **Exhibit "A"** on a final basis.

21. Pursuant to Federal Rule of Civil Procedure 4001(b)(2), the Debtor requests entry of a final order authorizing the use of cash collateral pursuant to the Budget. A proposed form of Order authorizing the use of cash collateral on an interim basis is attached as **Exhibit "B"**.

22. The Debtor further requests that the Court schedule one or more future hearings, to be held a reasonable time in advance of the expiration of any order permitting use of cash collateral, to consider the Debtor's continued use of cash collateral under budgets yet to be submitted.

VI. **BASES FOR RELIEF REQUESTED**

23. To the extent the Debtor's cash is the collateral of the Cash Collateral Lienors and/or any other person, the Debtor seeks authority to use the cash for the operation of its business in the ordinary course as authorized by sections 363(a), 1107 and 1108 of the Bankruptcy Code.

24. As applicable, the Debtor seeks authority to use cash collateral through and including November 30, 2013. A proposed budget is attached hereto as **Exhibit "A"**.

25. Section 363(c)(2)(B) of the Bankruptcy Code enables this Court to authorize the use of cash collateral. The Court is required, however, to "prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

Adequate protection is a concept "which is to be decided flexibly on the proverbial 'case-by-case' basis." MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987).

26. A creditor secured by cash collateral is only entitled to adequate protection to the extent of any post-petition diminution in the value of the collateral. See In re Club Assocs., 107 B.R. 385, 394 (Bankr. N.D. Ga. 1989) ("adequate protection payments are intended to replace the value of the collateral lost during the pendency of the case"); United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 372 (1988) (same).

27. Adequate protection, if it is necessary, may take many available forms, including (1) cash payments, (2) additional or replacement liens, and (3) allowance of an administrative expense or other relief. See 11 U.S.C. § 361; Travelers Ins. Co. v. American Agcredit Corp. (In re Blehm Land & Cattle Co.), 859 F.2d 137, 139 (10th Cir. 1988) (explaining that the three methods of adequate protection delineated in section 361 are "nonexclusive").

28. The Debtor proposes to grant the Adequate Protection Rights to the Cash Collateral Lienors and any other person holding a lien upon the Debtor's cash, including:

    a. the Cash Collateral Lienors and any other affected creditors will receive a replacement lien upon all pre-petition and post-petition assets of the Debtor (excepting chapter 5 claims) to the extent the Debtor's use of cash collateral results in a diminution in the amount or value of the secured claim of such creditor;

    b. the Debtor will pay adequate protection payments to UTFC in the amount of $3,565.17 per month; and

    c. the automatic stay arising under 11 U.S.C. § 362(a) shall be modified to authorize Porter (i) to collect the specific accounts that the Debtor factored with Porter prepetition, (ii) to recover and apply the amounts collected according to the terms and conditions of that certain *Recourse Receivable Purchase & Security Agreement*, between

Porter and the the Debtor, and (iii) to return and forward any excess amounts and all other amounts to the Debtor.

29. The Adequate Protection Rights reasonably and adequately protect affected creditors against potential harm they might incur in connection with use of cash collateral. Among other things, affected creditors will be adequately protected, at least in part, by the revenues and income that the Debtor's post-petition operations will generate for so long as the Debtor continues to operate.

30. In short, the Debtor's ordinary business operations have and will result in new and additional cash. As the Debtor expends cash to operate its business, the cash collateral that is expended naturally will be replaced by new cash.

31. The Cash Collateral Lienors will also receive adequate protection through the anticipated post-petition financing on priority lower than their existing liens. The Debtor is only asking for the use of cash collateral for periods after September 30, 2013, contingent upon the Debtor obtaining post-petition financing sufficient to meet its anticipated cash shortfalls.

## VII. CONCLUSION

WHEREFORE, the Debtor respectfully prays that the Court will enter an order authorizing the Debtor to use cash collateral on a final basis. A proposed form of Order authorizing the Debtor's use of cash collateral on a final basis is attached as **Exhibit "B"**. The Debtor further requests such other and further relief as is just and proper under these circumstances.

DATED this 6th day of August, 2013.

**PARSONS KINGHORN HARRIS**

/s/ George Hofmann
George Hofmann
*Attorneys for* debtor-in-possession
NUMIRA BIOSCIENCES INC.

**EXHIBIT "A"**

**(Budget)**

{00172791.DOC /}

| | Week of: 5-Aug | Week of: 12-Aug | Week of: 19-Aug | Week of: 26-Aug | Week of: 2-Sep | Week of: 9-Sep | Week of: 16-Sep | Week of: 23-Sep | Week of: 30-Sep |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | $ 146,268.64 | $ 89,649.94 | $ (18,013.30) | $ (58,255.20) | $ (237,041.03) | $ (145,190.97) | $ (290,139.68) | $ (286,513.78) | $ (434,820.70) |
| Total Inflows | 1,361.35 | 15,370.95 | 3,553.04 | 7,002.26 | 140,540.27 | 10,746.65 | 29,135.90 | 175.27 | 52,545.29 |
| Outflows | | | | | | | | | |
| Payroll | | (93,880.50) | | (119,798.20) | | (112,319.96) | | (112,739.19) | |
| Payroll Processing | | (300.00) | | (180.00) | | (300.00) | | (180.00) | |
| Payroll Bank Fees | | (75.41) | | (63.00) | | (75.41) | | (63.00) | |
| Commission | | | | | | | | | |
| 401K | (5,010.00) | | (5,010.00) | | (5,010.00) | | (5,010.00) | | (5,010.00) |
| Loan payments: | | | | | | | | | |
| Innoventure | - | - | - | (3,565.17) | - | - | - | - | (3,565.17) |
| Employee Reimbursements | (39.84) | (2,781.60) | (17,034.94) | (3,588.72) | - | - | - | - | - |
| Royalties | (1,000.00) | - | - | - | (1,000.00) | - | - | - | (8,100.00) |
| Health Insurance | - | (15,246.68) | - | - | - | (17,500.00) | - | - | - |
| Other Insurance | (1,555.75) | - | - | - | (1,555.75) | - | - | - | (1,555.75) |
| Rent | (27,874.46) | - | - | (5,500.00) | (27,874.46) | - | - | - | - |
| Utilities | - | - | - | - | (1,500.00) | - | - | - | (1,500.00) |
| Scanner Rent | - | - | - | (26,000.00) | - | - | - | (26,000.00) | - |
| Utah State Use Tax | - | - | - | (5,343.00) | - | - | - | | |
| Debtor's Accountant | (5,000.00) | | | (5,000.00) | | | | | (5,000.00) |
| Debtor's Counsel | (10,000.00) | | | (5,000.00) | | | | | (5,000.00) |
| Debtor's IP Counsel | | | (10,000.00) | | | | | | |
| Debtor's CPA | | | | | | | (3,500.00) | | |
| Other A/P | (7,500.00) | (8,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) |
| Quarterly Fees to US Trustees Office | | | | | | | | | |
| Move SLC Office | | | | | | | | | |
| Recruiting Fee | | | | | | (16,000.00) | | | |
| Cell Lines for 3D Oncology Screening | | (2,250.00) | (2,250.00) | (2,250.00) | (2,250.00) | | | | |
| Porter Capital Annual Fee | | | | | | | | (7,500.00) | |
| Total Outlfows | (57,980.05) | (123,034.19) | (43,794.94) | (185,788.09) | (48,690.21) | (155,695.37) | (25,510.00) | (148,482.19) | (39,230.92) |
| Net Cash Flow | (56,618.70) | (107,663.24) | (40,241.90) | (178,785.83) | 91,850.06 | (144,948.72) | 3,625.90 | (148,306.92) | 13,314.37 |
| Ending Cash | $ 89,649.94 | $ (18,013.30) | $ (58,255.20) | $ (237,041.03) | $ (145,190.97) | $ (290,139.68) | $ (286,513.78) | $ (434,820.70) | $ (421,506.33) |
| Cash Available from Factoring | 90,148.76 | 135,614.15 | 231,351.91 | 257,592.30 | 330,417.22 | 359,750.94 | 412,635.56 | 464,962.13 | 427,947.98 |
| Financing Charge for Factoring (3%) | (1,276.89) | (1,753.39) | (1,863.53) | (2,080.60) | (6,464.35) | (7,527.45) | (8,430.67) | (8,460.71) | (12,856.49) |
| Ending Cash + Factoring | 178,521.81 | 115,847.46 | 171,233.18 | 18,470.67 | 178,761.90 | 62,083.80 | 117,691.11 | 21,680.72 | (6,414.84) |

| | Week of: 7-Oct | Week of: 14-Oct | Week of: 21-Oct | Week of: 28-Oct | Week of: 4-Nov | Week of: 11-Nov | Week of: 18-Nov | Week of: 25-Nov |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash | $ (421,506.33) | $ (540,898.35) | $ (483,122.42) | $ (585,256.25) | $ (570,230.02) | $ (683,277.97) | $ (630,672.09) | $ (728,503.54) |
| Total Inflows | 36,714.73 | 89,785.92 | 30,804.51 | 90,757.15 | 35,522.80 | 100,615.88 | 58,653.05 | 53,395.92 |
| Outflows | | | | | | | | |
| Payroll | (118,356.88) | | (119,895.34) | | (119,895.34) | | (123,441.50) | |
| Payroll Processing | (300.00) | | (180.00) | | (300.00) | | (180.00) | |
| Payroll Bank Fees | (75.41) | | (63.00) | | (75.41) | | (63.00) | |
| Commission | | | (3,300.00) | | (3,300.00) | | (3,300.00) | |
| 401K | | (5,010.00) | | (5,010.00) | | (5,010.00) | | (5,010.00) |
| Loan payments: | | | | | | | | |
| Innoventure | | | | (3,565.17) | | | | (3,565.17) |
| Employee Reimbursements | - | - | - | - | - | - | - | - |
| Royalties | | | | (3,100.00) | | | | (3,100.00) |
| Health Insurance | | (17,500.00) | | | | (17,500.00) | | |
| Other Insurance | | | | (1,555.75) | | | | (1,555.75) |
| Rent | (27,874.46) | | | | (14,000.00) | | | |
| Utilities | | | | | (1,500.00) | | | |
| Scanner Rent | | | | (26,000.00) | | | | (26,000.00) |
| Utah State Use Tax | | | | | | | | (5,343.00) |
| Debtor's Accountant | | | | (2,000.00) | | | | (2,000.00) |
| Debtor's Counsel | | | | (5,000.00) | | | | (5,000.00) |
| Debtor's IP Counsel | | | | | | | | |
| Debtor's CPA | | | | | | | | |
| Other A/P | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) | (9,500.00) |
| Quarterly Fees to US Trustees Office | | | | | | | | (6,500.00) |
| Move SLC Office | | | | (20,000.00) | | | (20,000.00) | |
| Recruiting Fee | | | | | | (16,000.00) | | |
| Cell Lines for 3D Oncology Screening | | | | | | | | |
| Porter Capital Annual Fee | | | | | | | | |
| Total Outlfows | (156,106.75) | (32,010.00) | (132,938.34) | (75,730.92) | (148,570.75) | (48,010.00) | (156,484.50) | (67,573.92) |
| Net Cash Flow | (119,392.02) | 57,775.92 | (102,133.83) | 15,026.23 | (113,047.95) | 52,605.88 | (97,831.45) | (14,178.00) |
| Ending Cash | $ (540,898.35) | $ (483,122.42) | $ (585,256.25) | $ (570,230.02) | $ (683,277.97) | $ (630,672.09) | $ (728,503.54) | $ (742,681.54) |
| Cash Available from Factoring | 468,204.59 | 427,389.90 | 456,072.59 | 458,170.75 | 492,378.34 | 499,811.03 | 513,686.38 | 526,753.68 |
| Financing Charge for Factoring (3%) | (13,994.65) | (16,778.01) | (18,352.95) | (20,441.80) | (21,543.01) | (24,662.10) | (26,480.34) | (28,135.62) |
| Ending Cash + Factoring | (86,688.41) | (72,510.54) | (147,536.61) | (132,501.07) | (212,442.64) | (155,523.16) | (241,297.51) | (244,063.47) |

**EXHIBIT "B"**

**(Proposed Form of Final Order)**

*Prepared and Submitted by:*

George Hofmann, Esq. (10005)
Matthew M. Boley, Esq. (8536)
**PARSONS KINGHORN HARRIS, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone:  (801) 363-4300
Facsimile:   (801) 363-4378
E-mail:  mmb@pkhlawyers.com

*Attorneys for* debtor-in-possession
NUMIRA BIOSCIENCES INC.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| In re:<br>**NUMIRA BIOSCIENCES INC.**,<br>Debtor. | Bankruptcy No. 13-27663 JTM<br>Chapter 11<br>Honorable Joel T. Marker |
|---|---|

### ORDER AUTHORIZING THE USE OF CASH COLLATERAL
### ON A FINAL BASIS

This matter came before the Court on August 22, 2013 at __:__ __.m. for a final hearing upon the motion to use cash collateral, dated August 6, 2013 [Docket No. __] (the "**Motion**"), filed by debtor and debtor-in-possession Numira Biosciences Inc. (the "**Debtor**").  Appearances of counsel and other parties-in-interest were made on the record of the hearing.

Based on the evidence received by the Court and/or adduced at the hearing on the Motion, considering the representations and statements of counsel, and the Court having made findings of fact and conclusions of law on the record of the hearing, which findings and conclusions are incorporated into this Order by reference, the Court hereby

**FINDS AND CONCLUDES** as follows:

A.	the Court has jurisdiction under 28 U.S.C. §§ 157 and 1334;

{00172791.DOC /}

B.  this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O);

C.  no examiner or trustee has been appointed in this case;

D.  notice of the Motion, and of the preliminary hearing thereon, was and is adequate and proper within the meaning of 11 U.S.C. § 102(1) and Federal Rule of Bankruptcy Procedure 4001(b);

E.  the expenses identified on the budget attached hereto as Exhibit "A" are actual and necessary costs and expenses of preserving the Debtor's chapter 11 bankruptcy estate;

F.  the expenses identified on the budget attached hereto as Exhibit "A" must be paid to avoid immediate and irreparable harm to the estate pending a final hearing on the Motion;

G.  the following entities claim, or may claim, an interest in the Debtor's cash collateral (collectively, the "**Cash Collateral Lienors**"): (a) UTFC Fund II, LLC ("**UTFC**"); (b) Porter Capital Corporation ("**Porter**"); and (c) a group of co-lenders represented by vSpring III, L.P. ("**vSpring**") as collateral agent;[3]

H.  to the extent that the Cash Collateral Lienors and/or other creditors (collectively, the "**Affected Creditors**") have an interest in the Debtor's pre-petition cash and/or pre-petition assets of the Debtor which will result in cash proceeds (collectively, the "**Cash Collateral**"), then the Affected Creditors are adequately protected by the replacement liens and other adequate protection rights granted hereunder.

WHEREFORE, based upon the Motion, the foregoing findings and conclusions and other matters of record, and good cause appearing, it hereby is

**ORDERED** that:

1.  The Motion is GRANTED on a final basis, as more particularly described below.

2.  The Debtor is authorized to use and spend Cash Collateral to pay expenses as consistent with and identified on the budget attached hereto as **Exhibit "A"** (the "**Budget**") to

---

[3] The co-lender's represented by vSpring as collateral agent include: vSpring; various affiliates of vSpring (including vSpring III D, LP, vSpring III, (SP) LP and/or vSpring Partners III LP); Crocker Ventures, LLC ; Dave Weinstein LLC; Dinesh Patel; JLS Holdings, LLC; Kickstart Capital, LLC; and other persons.

{00172791.DOC /} 2

the extent of the amounts reflected on the Budget for the period from August 22, 2013 through the expiration of this order.  Provided, however, that the Debtor's authority to use Cash Collateral after September 30, 2013 is contingent upon the Debtor obtaining this Court's approval before then of post-petition financing, junior in priority to the Cash Collateral Lienors, in an amount sufficient to cover anticipated shortfalls for the period from September 30, 2013 through and including November 30, 2013.  The Debtor may exceed the amounts budgeted for individual line items on the Budget by up to ten percent (10%).  Further, savings in prior periods may be carried forward to permit greater expenditures in later periods.

      3.      With the express written consent of the Affected Creditor(s) having the first priority lien interest therein, the Debtor may use and spend Cash Collateral beyond or in addition to the amounts reflected in the Budget to pay any additional costs or expenses that arise in the ordinary course of the Debtor's business.

      4.      Affected Creditors shall receive, and shall be afforded, the following rights and treatment as "adequate protection" for the Debtor's use of cash collateral (collectively, the "**Adequate Protection Rights**"):

      a.      the Debtor will pay adequate protection payments to UTFC in the amount of $3,565.17 per month;

      b.      the automatic stay arising under 11 U.S.C. § 362(a) shall be modified to authorize Porter (i) to collect the specific accounts that the Debtor factored with Porter prepetition, (ii) to recover and apply the amounts collected according to the terms and conditions of that certain *Recourse Receivable Purchase & Security Agreement*, between Porter and the the Debtor, and (iii) to return and forward any excess amounts and all other amounts to the Debtor;

      c.      to the extent that the Debtor uses cash and to the extent that such cash constitutes "cash collateral" of the Affected Creditors within the meaning of 11 U.S.C. § 363, then to the extent such use of cash results in a diminution, in the aggregate, in the

amount of the collateral of the Affected Creditors as the same existed on July 5, 2013 (the "**Petition Date**"), as adequate protection for the Debtor's use of the same, the Affected Creditors hereby are granted a properly perfected security interest and replacement lien (the "**Replacement Lien**") in all pre-petition and post-petition assets of the Debtor (excepting chapter 5 claims) to the extent of such diminution.  The lien and security agreement granted hereunder shall be in addition to the liens, if any, that the Affected Creditors had in the assets and property of the Debtor as of the Petition Date.

5. The post-petition lien granted to the Affected Creditors will be shared, as they are identified, with other secured creditors holding a perfected lien upon pre-petition cash or other pre-petition property resulting in cash proceeds. The priority of each such secured creditor's replacement lien upon post-petition property will be based on the priority each secured creditor held in the Cash Collateral of the debtor as of the Petition Date. Such priority shall be determined by agreement of the secured creditors and/or by order or judgment of the Court.

6. Nothing in this Order shall be deemed to determine the extent, validity, or priority of the alleged claims or liens of the Affected Creditors.

7. The authority granted by this Order shall expire on November 30, 2013, at the hour of 11:59 p.m. (Mountain Time).

8. The Debtor shall serve notice of the final hearing on all parties in interest that are entitled to notice of the Motion and, with such notice, shall include a copy of any revised or additional Budget.

9. This order is effective as of  August 22, 2013, when the Court's verbal ruling was announced in open court at the conclusion of the hearing on the Motion.

------------------------------------ END OF DOCUMENT ------------------------------------